The District Court abused its discretion when it declined BP's request to review the Deepwater Horizon Settlement Program's nearly $2.5 million award to the claimant. The District Court left in place an appeal panel decision that substantially misapplied the settlement agreement on a fundamental issue that even the claimant effectively admits is a recurring one. When revenue earned in a related party transaction is excluded from the calculation of variable profit because it is not conducted at arm's length, do the expenses associated with that revenue have to be excluded too? The settlement agreement, basic principles of accounting and economics, and common sense all point to the same conclusion. These expenses must be excluded. And here, the failure to exclude those associated expenses had a significant impact on the calculation decision of the claimant's award, increasing it by about $1.4 million. Let me ask you a few questions about the policy that allegedly led to this. Who created policy, who created policy 328, and what is its role? So 328 is developed by the settlement program with input from the parties. Does the class council and BP have the opportunity to submit comments after the policies are promulgated? So is it public notice and comment, or just somewhere within the subset of claimants and BP? I think that maybe elevates the formality of the process a little more. But I think the second question that you ask is really the more important of the two, because BP's position is that policy 328 doesn't answer the question, and indeed it doesn't address the question at all, because it is purely a policy about revenue. The title... I'm not talking about the background, either. You're talking about something that's not particularly relevant, whether the background for the policy was responding to a particular identified, and we can look at it, concern. And it was only addressing that. Sorry. I understand. I didn't mean to suggest that's not an important question. No, no, no. I'm not quibbling. These policies were promulgated during the administration of the settlement program, sometimes in response to issues that had arisen, sometimes just to address and provide guidance to the accountants who are administrating the program. With respect to policy 328 version 2, I'm not aware that there was a specific issue that drove it as relates to related party revenue. 328 has about eight categories of types of revenue that it addresses, and it states that those categories of revenue generally would be excluded from the calculations where they are not at arm's length, and it directs, of course, the settlement program, where appropriate, to investigate both the expenses and the revenues to try and figure out if those various eight categories are at arm's length or not. And in fact... But Judge Barbier's decision that maybe each of you have pointed us to, I don't remember which party, from June of last year, his decision is based on that policy, as if he's giving it some sort of standing. I'm not saying he's indicating he's bound by it, but he's applying it and not quibbling with it. Sure. So... Your position is it makes no economic sense if you read it narrowly. When you also, I think, are arguing another way to read it is it's talking about one thing that has to be excluded, and necessarily related figures to that calculation have to be excluded as well. Now, is there, I mean, it seems to me what this comes down to is if you exclude expenses, exclude revenue because of some non-arm's length transaction, your position is the whole transaction has to go, the whole item, whatever it might be. It's not necessarily always sales, though, is it? It's not always necessarily a purchase and a sale. You're exactly right, Judge Southwick, and a couple of points on that. The categories of types of revenue that are identified in Policy 328, there are, as I said, there are about eight different categories, and it's a non-exhaustive list. A number of those categories are ones that don't necessarily have expenses associated with them in the same way that you have it here. In that respect, that's sort of what makes this a very easy case is that you have cost of goods sold that are directly associated with this revenue. You have a car dealership that goes out and they buy vehicles in an arm's length transaction. Say they're buying vehicles from an OEM. That's an expense on their balance sheet. That part of the transaction, however, has no impact on variable profit. All you've done is you've converted cash and you've turned it into inventory. Now, they go and sell that inventory in a related party transaction. They sell it to two entities. So now what you've done is, again, you've had no impact on variable profit. It's an at-cost transaction. You've now converted that same amount of inventory back into cash. Well, what happened here is that in calculating variable profit, they excluded the revenue that the claimant got in that transaction. And so what you're left with is this hole in its balance sheet. It no longer has the inventory because it sold that to this related party. But the settlement program has said, well, we're not going to include that revenue because it's not part of a related party transaction. So what you're left with is this fiction. It is a pure fiction showing that the claimant had a greater decrease in variable profit because you're only looking at expenses and you've blacked out the revenue. So the settlement program wasn't calculating variable profit at all. I don't know what you would call it. And the claimant really offers very little substantive defense of the accounting behind this. And there really is none. Variable profit is revenue minus expenses. And all that they've done here is accounted for the expenses. That's not a calculation of variable profit. To get back to 328 for a second and the discretionary review decision that Judge Salford mentioned, one point about that is that that was a case where he was focused on whether or not the expenses themselves were part of a related party transaction. And Judge Barbier said policy 328 is just a revenue policy. It has nothing to do with expenses. And I think the mistake that the appeal panel made here was to likewise suggest that the outcome would have been different if the expenses had been part of a related party transaction, and that's an argument that the claimant also makes. However, that is a complete red herring here. It doesn't matter whether or not the expense is part of an arms length or a non-arms length transaction. The key is that there's got to be symmetry in the treatment of the revenue and the expenses associated with that revenue. That's not what happened here. And that's why... I think we accept your argument. We still have to go argument about perhaps too limited an application of what the policy may have been talking about. We still have to get to that District Court Barbier was compelled to grant review. Several things seem to come into play here. One is he has reviewed this arguably in the decision in 2018, and he says he was doing it to resolve conflicting decisions by appeals panels. You may have some sort of... I mean, the response you already gave may to some extent deal with that, but he's already granted discretionary review in part to resolve conflicts on this policy. And the settlement agreement itself says that he does not need to take review except in unusual rare circumstances. You know the labels better than I did, whatever the categories are. We also have the baseball rules where you offered zero dollars, and I don't know where your calculation of if you take out the expenses and revenue on these insider or closely related matters, if you still think zero is the right amount, we've got all of that in play that goes far beyond just whether this decision was wrong. And you're involved with this. You've got a lot more of these cases than I do, and I think I got a lot of them than we do. So how does all that play out? It's one thing to say this is the wrong calculation for this case. It's quite something else for you to win this case. I understand that. So a couple points. First of all, in terms of discretionary review, and we understand that we have to unlock this special door to show that Judge Barbier was required to exercise review here, and what this Court has said, and I think the clearest encapsulation of it is in the Holmes case, is that there really are two categories of cases where discretionary review is required. One is where you have a split in the appeal panels, and the second is where you have a substantial misapplication of the settlement agreement. And in fact, Holmes even goes on to say it doesn't have to be an actual misapplication. It's even just the potential for a misapplication. Here, this is one of, if not the clearest misapplications that I think I have seen in terms of an appeal panel decision. That is just, it is incontestable that the settlement program was wrong in the policy that it took to calculating variable profit. So to your question is, what, if anything, do we do about that? Well, we're certainly at a point in the process for the Deepwater Horizon settlement where we are nearing the end. The universe of claims is, of course, relatively limited at this point, but the question is, for those claims that do remain, are we going to ensure that we get an accurate and a proper calculation of variable profit? This issue of whether or not you are going to account properly for expenses in a related party transaction, this is not a simple one-off. The fact pattern of claimants who have related party sales is incredibly common. This comes up all the time. And so the question then, as I said, is, are we going to take steps to make sure that this is resolved properly as these final claims are getting resolved at the various different levels? What is the history of this? The policy date, I don't remember now, 328. There's related party claims being resolved before that and since then. Here we are near the end. I hear that from time to time, but near the end, perhaps. This has been going on for years. Why do we need to address it now? Well, I think this case, more so than others, I think presents a very clean, clear, and easy question. There are no factual disputes at all. No one's disputing the amount of revenue at issue. No one's disputing whether or not the revenue was earned in a related party transaction. Nobody's disputing that there are expenses that are directly associated with this revenue. It is as clean a question of interpretation of the settlement agreement as you have. I guess the question is whether we want to take steps to make sure that it is properly resolved, not just for this one claimant where it did have a significant impact, but also for those claimants that do remain. What's notable here is that the claimant admits in their briefing that the position we're advocating, the gun kicks as hard as it shoots. There are going to be instances where this policy, the interpretation we're advocating, it's going to work against BP, and it's going to be favorable for claimants. We are advocating a BP-neutral approach to this. We're saying, let's just get it right. So are you advocating sort of at bottom? If Holmes says this sort of two-level, are you, in effect, advocating a third level? In effect, that this is the kind of, I mean, in other words, a third category of cases where it's an abuse of discretion for the district court not to exercise its discretion. Ergo, in this variable profit arena. Do you understand my question? In other words, if you take your point, if Holmes is there and says, one, two, these are the ones when there's clear conflict, et cetera. Are you, in effect, advocating yet a third level? I'm not saying whether that's good or bad, I'm just saying, are you, in effect, advocating a third, assuming, for whatever reason, we say it doesn't fit one, doesn't fit two, no clear evidence that there's this split, but yet you urge the importance of variable profit. Are you, in effect, asking, saying, well, here's a third level of when the Fifth Circuit should say it's, quote, an abuse of discretion for the district court not to exercise its discretion to review these because they'll get this. I mean, I've stated it that well, but. No, I understand. And I apologize if I was unclear. Our position is that we think that this fits very clearly within the second category of a substantial misapplication. No, I knew that that was what your main urging was. But, you know, just, I just threw it out there for thinking and say, well, you know, because it gets kind of hard as he says, we get a lot of these cases and all of that. And, you know, assuming some others of these have come around and we get back to, we've said, OK, the district court has discretion within which to determine whether, you know, to review these. And so if we're saying it's really discretion, then, you know, when are we going to throw the flag, so to speak, poor. I shouldn't have said that. Take that back. Strike that. I'm never going to strike that. No, but, well, I shouldn't say that. Or maybe I did. But you understand what I'm saying. I'm just saying we're still a hedge between this. We say the district court has, quote, discretion. Yet, is this one of those where we're going to say, OK, yeah, you have discretion. But you probably need to look at it because variable profit is, you know, such a significant piece of it. That's all I want. I know your primary argument would be to say it already fits within what Holmes has said. But just teasing the point out as just suffixes because you see a lot of them. They see a lot of them. You know, we're trying to find the kind of bright line. That's all. I mean, I'm not saying abandoning your argument. I was just asking, you know, just interested. Sure, Your Honor. Can I just have a minute to respond to that? And certainly we understand and are sensitive to the fact that this review, as you have emphasized, is discretionary. And I think the factors that warrant a holding that it was an abuse of discretion here, as I said, number one, is the absence of any factual disputes. Number two, as Judge Stewart, as you pointed out, the importance of variable profit here, I agree with you. I do think that that is a key part of it. And one of the things that this court has looked to in determining whether or not the denial of discretionary review is itself an abuse of discretion is the importance of the issue. And so I would go back most recently to this court's decision in the Texas Gulf Seafood case from back in November. I know you're familiar with it. I thought we might hear about it. Yeah. But this court characterized the issue there as one that goes to the core of the settlement agreement and the core of the implementation. And just as the classification of expenses as fixed versus variable is core, so too is the determination of what is variable profit. Arguably, variable profit is even more important because it is the fundamental basis for step one compensation. I think the last point, Your Honor, that this court has looked to in determining whether or not Judge Barbier abuses its discretion in denying review is whether or not the claim is truly a one-off. In other words, does it relate to some sort of idiosyncratic business model, something like that. And that's not what you have here. The fact pattern, you think about all of the companies out there that are in the Deepwater Horizon settlement zone, parent companies with subsidiaries, affiliates, private companies that have LLCs. All these sorts of companies are constantly engaging in commerce with one another, generating all of these related party revenues. And Holmes is a great example of the converse of a very unique claimant that was stating that it had entered a new line of business and that should therefore qualify for treatment as a business startup. And this Court said, essentially, nice try, that this is not a question of broad significance. This relates only to your specific business model. That's not what we have here. And for all these reasons, Your Honors, we would submit that this Court should reverse and remand. Thank you. Kennedy. Thank you for your responses to all of our questions, and you have your rebuttal time intact. All right. Let's hear from the other side. Mr. Schloss. Thank you, Your Honors. Good morning. May I please declare Peter Schloss on behalf of the claimant. Mr. Schloss, before you start, an issue in these cases is that they are sealed and that the parties are confidential. Does your client need this case continue to be sealed? And would an opinion in this case, could it properly reference the name of your client without violating the interest of that client? How do you see about, how do you react to the sealing of the case? I think the answer to that, and I didn't have specific authority to answer that, but I think the identity of the client does not need to be sealed. I think the concerns involve whatever numbers might be thrown around in the decision, if any. Including the award? Including, potentially, the award. I, again, this was not something that I had discussed coming in here. You may want to follow up on that. Yeah. And give us what you can say at this point. Be happy to do that, Your Honor, of course. I've sort of struggled with where to begin because there are... On that point, I guess for both sides, it's just, what, last week, we just... Last week? The in-bank court just filed an order. So if you hadn't looked at it, you may want to look at it. I mean, it's not germane to the merits of this case, but I'm really glad Judge Salford raised the point about the sealing because that's still at least troublesome to me of when we do, when we don't. We've kind of said, for lawyers to tell us when it needs to stay sealed, blah, blah, blah. But the point is, last week, we filed an in-bank order that just speaks to the sealing question. So it's just an FYI. You don't have to respond to it, but just an FYI to take a look at it. We're just not seeking to tell anybody what to do. Just sometimes it was sealed in the district court, it gets here, it's still sealed, and we're like, well, should it still stay sealed? Whatever. So just take a look at the order that was filed and as it may relate to other cases you have. Go ahead, Woodchurch. We'll take a look at it, and if it pleases the court, we'll make a submission on that point, if you would like, specifically. I think the starting point from our perspective is to look at what Judge Barbier has been instructed to do. I mean, your job is to decide, did Judge Barbier abuse his discretion? And so I want to point out that we're not talking about a standard litigation. We're talking about the implementation of a private agreement according to procedures that the parties have themselves designed. And one of those, part of that process is what we've labeled in our brief, the discretionary review rules. There are rules that the parties have given Judge Barbier as to his exercise of discretion on this issue, discretionary review. If you look at Rule 4, it makes it clear that the court has a very limited role in all of this process and that discretionary review is reserved for extraordinary, rare, and exceptional cases. And in the recent CF Farms decision that we made the subject of our Rule 28J submission, this court quoted from Rule 4 as part of its discussion of the standard of review. So we start from the lens that Judge Barbier has been told he only needs to get involved in exceptional cases. And so the question is for this court, is this case so exceptional that Judge Barbier could not refuse to review it? Is this a case that he had no discretion to decline to review? So I want to point out a few things about the claim as it got to Judge Barbier. First of all, the claims administrator employs accounting professionals. The accounting professionals of the claims administrator investigated this issue thoroughly. There were exchanges, and this is in the record, there were exchanges back and forth between the claims administrator's accountants and the claimant on this very issue and documents were submitted and the accounting professionals with the claims administrator reviewed the issue thoroughly and determined that these revenues should be excluded. Now, let me ask you about that. Is that determination expressed in the policy? Are you saying all of what you just told us led up to the promulgation of this printed policy? Or is that independent of the policy? No, this was in the review of this specific claim, which was long after policy 328 was issued. That's the back and forth I was aware of, and I want to make sure that that's what you're talking about. But can you explain standing there, what is the economic sense of this? Yeah, well, here's what I can explain. I'm not an accountant. This is an accounting issue. Now, the professional accountants employed by the claims administrator have determined that in the context of related party transactions, these types of things are treated differently than arm's length transactions. So, and it may be... Let's look at the list though. The list, a lot of them are not sort of buy and sell situations and indeed revenue may be the only thing. Insurance proceeds, interest incomes, gains or losses from sale of assets. Okay, that would be an example. But some of this would be, it seems to me perfectly understandable that all you would exclude is revenue because you don't have associated expenses necessarily. But on related party transactions, and particularly for your client, there very much are related party expenses. I mean, revenue. So how can it make any economic sense to exclude one and not the other? And you're standing there as a non-accountant. I just want your best effort to explain it. Well, what I would say is, you're talking now not about just this one claimant, but about another two companies in the same family of companies. So economically, from an accounting standpoint, you're not just dealing with the claim of this claimant, but also of the related companies. If they make a claim. If they made a claim and maybe they... And I think they made claims and I think they were denied maybe because of the flip side of this revenue expense issue. But what I would say is it's an accounting issue. It's a very technical accounting issue. And so the question is... And believe me, it's not just policy 328 because, again, the accountants employed by the claims administrator reviewed this claim thoroughly. I mean, if you look at the record, the record is 13 volumes long, 4,200 pages of accounting data, almost entirely. So this claim... And then the appeal panel took a de novo review of this claim. So it was very thoroughly vetted by accounting professionals before it got to Judge Barclay. The accountants on the appeal review panel? That I can't say because the identities of the appeal... Well, in our category of people, I thought the accountants were probably not part of the picture anymore, on these reviews. They may have been earlier in processing the initial claim. Well, part of your argument in your brief in responding to what BP says on this is it all comes out on the wash, that sometimes BP's benefited and sometimes they're not. All right. Sorry, Mr. Solis. But if you can... Hopefully your train of thought is still there. And versa. Versa here. Thank you, Your Honor. I just want to wrap up on the point we were talking about. The question really is, did Judge Barbier... Was he compelled to review this technical accounting issue involving related party transactions which had been thoroughly vetted by professional accountants employed by the claims administrator and subject to appeal panel review? And was it his job to substitute his judgment for the judgment of the accountants on an accounting issue that was guided by and determined by a policy that the parties, BP included, had a hand in fashioning? So when you think of how broad his discretion is and you frame it that way, there's no way you can say that Judge Barbier had to review this case. Now, the point that, Judge Southwick, you were moving to was we say it all comes out in the wash. That's not exactly the way we put it. But if you look at the settlement agreement, the real essence of the settlement agreement is a comparison, that you are comparing pre-spill profit with post-spill profit. That is the essence of the settlement agreement. And the issue is, are you using the same methodology to determine profit before the spill and after the spill so that, you know, as long as you're comparing apples to apples, you are going to get an accurate reading of what the loss is. And that's what BP agreed to pay lost profit. So the measure is the profit before the spill against the profit after the spill. Well, it seems to me that the same error is being made in both sets of calculations. There's still a problem. It's one thing for BP not ultimately to suffer any loss because sometimes they'll be benefited, sometimes not. That's not a good way to run a claim system. But secondarily, your client may be benefited this time, but the next case, the client may be out two million dollars. And so I think if there's no economic sense to what is being done and I'm not seeing what it is yet, and I must say I'm not an accountant, but I used to be able to add and subtract, that if you take out only part of what would determine whether there's a profit or not, if you take out only the expenses and leave the income or take out only the income and leave the expenses, you're not determining anything. But I mean, we've already been down this road and that's what troubles me about this. And I don't think it's enough to say that it's an accounting questions and accountants have looked at and we have to get in some way, depending on the discretion, broad discretion of Judge Barbary, but we have to in some way determine if this is actually happening. Are you familiar, Mr. Weiner referred to it a moment ago, the Texas Gulf Seafood case, this is the most recent effort by this court to intrude ourselves into the calculations of the claims process over dissent, concurrence and dissent of the way that we are doing it. We are very reluctant to do it. And I certainly don't think a pattern of doing that is what this court's going to do. I say all that as an observation, but this is a troubling calculation. And it seems to me from policy 328, if that's the number, it could have broad ramifications, but here we are at the end, numerous applications, but here we are at the end of the process. I just don't know how all that plays out under the discretion of the district judge. Got any more to say about that? Yeah, I do. I have a bit to say. First of all, when you talk about the economic sense, in a generic arm's length transaction, I'm with you 100%. If you sell something, you deduct the cost, okay? We're not talking about a generic arm's length transaction. The accountant, the claims administrator has determined that related party transactions should be treated differently. And that does make sense because you're talking about two companies that effectively, and I hate to use this analogy, but two companies that put their money in the same pocket. So while you want to look and they want to focus you just on this particular claimant, there is another party that's affected by this. And in this case, two other parties whose books are affected by this. And the claims administrator, as a professional, again, I'm not an accountant, but as a professional accountant has obviously come to the determination that that transaction is different than a generic arm's length transaction. So there is economic sense and maybe the revenue is reported on the related parties books and excuse that claim the other way. I don't know. I think I also want to address this notion that it has widespread application because there's no evidence to support that. And I would encourage you to look closely at BP's request for discretionary review because they're aware of the rule that says, you know, discretionary review is only going to be granted in exceptional cases. You would think in their request for discretionary review, they would try to point out why this is an exceptional case. But you look at it, there's nothing there. And in particular, on this specific issue, they only cite one other appeal panel decision that even addressed the issue. And that was from 2014. So now, like you say, the current version of policy 328 was issued in April, 2014. It's been around for five years. If this is such an important issue that has such widespread application, why could they only point Judge Barbier to one other decision that was four years old at the time? So Barbier's 2018 opinion that whichever one he cited to it says there was a conflict among the appeals panels. It sounds as if there were numerous. Probably because of this case. Well, it sounds to me as if he's referring. I mean, we spent a lot of extra time in this case waiting for the bell to go off. Now, give me a moment here to find that language. But he said, we have conflicting decisions by the appeals panel. So if he didn't number it, nobody's going to say, what do you mean? I mean, it sounds to me as if there were multiple. We just leave it there, decisions. A multiple could be two. We don't know. Judge Barbier knew. Judge Barbier knew. He understands his. I mean, nobody knows this program better than Judge Barbier, except possibly BP. Judge Barbier made the determination, and for the record, this is discretionary court review number 2018-993, which apparently was in June of 2018. He made the decision that it's not his role to substitute his judgment for that of the accountants on an accounting issue. Counsel, let me ask you about that, because you've gone back to that a few times, and abusive discretion is a pretty wide berth on review, whether it's this court or Judge Barbier reviewing from the appeal panel. But it seems like you're superimposing the expertise of the CPA. So now we should, since none of us are, at least I don't think, out of certified public accountants, we should be, I'm not, we should be deferential to them. So it seems like right out of the box, once the determination has been made, and the CPA or multiple CPAs are involved, then deal is done. And I don't think that's what the settlement agreement contemplates, because it provides these levels of review. If it were that simple, it seems like nothing would ever reach Judge Barbier, or he could just say, well, if the CPAs figured it out, then that's the end of it. And do what the CPAs say. So I'm a little concerned that you're asking us to indulge an account, treat this as purely an accounting issue of which we have no or little expertise, as opposed to a legal issue in terms of misapplication. Okay, well, let me unpack that a little bit to break down. Again, this is not a standard litigation. This is the implementation of an agreement between private parties who have established rules as to who's going to do what. Now, I understand what you're saying, but there are legal issues that come out of this, right? This court has been involved in legal issues. Are cases removable? Is there a right to appeal? Does federal law preempt state? Those are legal issues, clearly. Those are appropriate for the court. Judge Barbier can review other issues. He has discretion. The question, though, is does he have to review what is essentially a technical accounting issue that has been thoroughly vetted by the professional accountants, which, let's face it, the parties agreed that those issues would be committed primarily to the claims administrator and his staff of professional accountants. It's been reviewed de novo by an appeal panel. And again, that's part of the structure that the parties have agreed to. So could Judge Barbier review? Sure, he can review whatever he wants. That's not the issue. The question is, does he have to? And what kind of issues does he have to? Now, BP posits that this involves a misapplication of the settlement agreement. Well, in their request for discretionary review, they didn't cite Judge Barbier to any specific provision of the settlement agreement. And the reason for that is the settlement agreement says nothing about related party transactions. So, you know, there are generic calculation parameters. But his point, and maybe he didn't cite whoever wrote it, anything to Judge Barbier, but it seems to me his point is that differences in variable profits before and after the disaster is what the settlement agreement's about. And that's what, this undermines that. I mean, that's the, seems to me the issue that we would be facing. I suspect you could put a group of accountants in a room and get a very spirited discussion as to what should and should not be included in the calculation of variable profit. Then you throw in, OK, let's not talk about it in an arm's length transaction, let's make it a related party transaction. I don't know the answer to that. But, like, what we're talking about is one good, one product, and the claimant buys it and then sells it. And we're only going to include part of that transaction because it's questionable. The other part is questionable because it's related. And even if that's, and I have no doubt of that, related party transactions are not going to have the same economic factors to them. But it seems to me that it's a fairly straightforward point that I would like to think accountants could agree on. And I would say that we have agreement here. There's no indication that any of the accountants are reaching different decisions on this. We have an agreement among the accountants. The only ones who is attacking it is a lawyer. Now, Mr. Wiener may be an accountant, I don't know. Lawyers up here have questioned it, but may we also. But again, it's not in the context of your standard transaction. We're talking about two companies that are effectively owned by the same person. And so the professionals believe that is subject to different treatment. Now, I would also add, policy 328 came out, the current version came out in April 2014. If it was such a problematic issue, why didn't, I mean, BP has a hand in crafting these policies. It has a right. Let me ask you just a process question. Sure. Assuming in these scenarios where we send it back, you know, saying, I'm not saying we're all here, I'm just saying, we send it back saying it was an abusive, I mean, in effect, you should review this. So it goes back to the district court. Okay. Does that necessarily mean that Judge Barbier, in this case, sends it back to the same claims administrators? I don't mean same as an identical, but is inherent in, whenever we do it, the Gulf Seafood case in any of the scenarios, Holmes or the rest, where our court says, boom, you know, use of discretion, you should have ruled. So it's inherent in that, that it's not Judge Barbier per se who's wrestling with the variable profitability or, but just part of that, you know, send it back to the claims administrators or the CPAs or whomever. Mechanically, is that really what works? Or, I mean, that's just a point of information because I'm just trying to get back to, sometimes we send things back to a judge on sentencing or whatever. And they say, well, I already looked at this. So they look at it again and they do the same thing. And they say, well, you told me to look at it, I've already looked at it. So I was just asking more mechanical, is inherent or is implicit in sending it back to Judge Barbier necessarily means it goes back to the claims administrator or is it just, we send it back to him and he looks at it and then let's say, if he affirms what he did, well, he's done what we asked. We sent it back, he looked at it. So that's kind of a process question. Right. And I don't know the answer to that, but he has decided the issue, you know, in the other case, he did decide the issue. So you could very well send it back to him. He could say, I've decided the issue. Well, I mean, I can, well, not to take us off track, but I mean, I can well see just like you're giving examples in cases like this where, you know, it benefits BP, others when it doesn't, et cetera. I can well see some senses where if we send it back to him, it almost by definition means sending it back to the claims administrator just because of the nature of what's sent back. Whereas I could also foresee that not been the case. My question was not meant to telegraph any answer. It just was a process. And, you know, Mr. Weiner can ask, but that's, you've, you know, I think responded to me. But if I may just briefly, it does raise a valid issue then. If you're going to instruct that this process somehow be changed, what about the claimants who have already been through this? And perhaps whose claims were denied because this issue worked against them? Do they get a do-over? Because all of a sudden, we're at the end of the process and the rules are changing. Well, the answer to that would be no. I think. Yeah, the answer would be no. I mean, that wouldn't be different than, you know, when we decided the law differently and, you know, yours has already been done. Pretty sure the answer to that, but I mean, it's a fair question, but the answer probably would be no. Okay. I do think it's an inherent problem with the fact that the settlement's been around since 2012. Here we are in 2019 and this is the first time you're being asked to even consider this issue. So with that, we would ask that the decision be affirmed. We don't think there's any abusive discretion and we'll leave with our brief. All right. Thank you, sir. And with our apologies for the unexpected interruption to you. All right. Back to you. Let's just not to take all your time. Can you give me a 30 second answer? Process-wise, how does that work? Sure. Thank you, Your Honor. I do think certainly the mandate, of course, would go back to Judge Barbier, but I do think that at that point, depending on what the court were to say, likely Judge Barbier would demand back to the settlement program. So BP is essentially asking this court to state a very clear rule, a simple rule, really, that just says that if you exclude revenue because it is from a related party transaction, not at arm's length, that you would exclude the associated expenses. And by pronouncing a rule like that, that I don't think would really leave Judge Barbier anything to do because he certainly is not going to crunch the numbers to figure out how that impacts the claimant's claim here. And that's why we think that it would then go from Judge Barbier back down to the settlement program. Now, on the issue of the accounting, because a lot has been said by the claimants about how technical and complex this is. If this is a technical accounting issue, it must be the least technical accounting issue in the history of accounting. After all of this time, after all the submissions, we have yet to see any explanation that provides a justification for the accounting and economics behind what happened here. The best that the claimant can come up with is for the first time an argument that maybe something happened on the books of the related parties that would cause what happened here to make accounting and economics sense. Well, maybe something did happen off in the ether that none of us knows about. But on the record before us, we know that what happened here, it makes no accounting sense. The settlement program didn't calculate variable profit for the claimant. It was clear, as clear an error as I think we have seen in any of these cases. I'm sympathetic to it, that it's a clear error. Simply doesn't necessarily mean I'm yet agreeing, Mr. Schloss. It seems to me that this is an accounting issue. It was looked at by accountants. It was raised by Judge Barbier in that June 18 decision, and he stuck with it. I mean, I am both to jump in the middle of something that allegedly has been looked at by people who are more aware, not Judge Barbier per se, but others. Is there any middle ground here? Is there any way to get an explanation of what in the world is going on that has ever been done before? We can obviously order all sorts of things, but in the program, has there ever been some direction for a better explanation of why you are doing it this way? Or just a little bit of explanation about the process. So you know at the settlement program level, when the initial claims decision is being made, and this process here took several years because the claimant received multiple incompleteness notices, BP is not involved in that process at all. We have no input. We're not communicating with the accountants or anything. A final decision is made at that settlement program level, and at that point, BP can decide whether or not, or the claimant can decide whether or not to appeal to the appeal panel. The appeal panels, and I think this was maybe Judge Southwick's question earlier, the appeal panelists are not accountants. They are, I think, by and large lawyers. They're reviewing these decisions. They can, and sometimes do, send cases back down to the accountants for additional explanation. So the notion that there are layers and layers and layers of accountants who are looking at every claim over and over and over again, that's not what's happening. That's not how this process works. At the initial stage, again, BP is not involved. We're not in there saying to the accountants, by the way, if you exclude this revenue because it's from a related party transaction, you also have to exclude the expenses. We don't have the ability to do that. It's not until we get to the appeal panel that we have the first opportunity to provide any input in the process. I'm not aware of an instance where this court has rendered a decision that sent it back down just for an explanation, but obviously there's no reason that you couldn't do that if that's what this court deemed was the appropriate resolution. Who would explain? I'm sorry? Who would explain? I think it would have to ultimately go back down either to the appeal panel, and then the appeal panelist, presumably, would ask for additional or could ask for additional explanation from the settlement program itself.  of discretionary review, Your Honor, this is just like Texas Gulf Seafood, an issue that goes to the core of the settlement. And just as in Texas Gulf Seafood, this court found it appropriate to exercise that it was the rare instance where discretionary review was required. This case is no different. Variable profit is certainly far more important, or at least as important, to the administration and application of the agreement as the distinction between fixed and variable expenses. And BP submits that a holding in BP's favor here would not disturb either the administration of the settlement, nor would it unduly interfere with Judge Barbier's discretionary review. For these reasons, we ask that the court reverse and remand. Thank you, Your Honors. All right, thank you. Thank you to counsel for all sides for giving us some help on the brief and response to our questions. The case will be submitted along with the other cases that we have heard this week. In addition to the non-early argument cases. So that said, this concludes the work of our panel for this week. We will stand adjourned.